Argued at Pendleton October 28, 1924, modified January 13, 1925.

RE DETERMINATION OF WATER RIGHTS ON GRANDE RONDE RIVER.

(232 Pac. 626.)

**Judgment—Decree not Binding for or Against Persons not Parties to It.**

1. A decree, in action by a milling company against persons appropriating its waters, is binding on such defendants and their successors as to their respective water rights as against milling company, but would not bind them respecting strangers to that litigation.

**Stipulations—Stipulation by Appropriators, in Action Against Them by Milling Company, Held not to Deprive Them of Priority Rights as Against Others not Parties to Action.**

2. Where, in action by milling company against appropriators of its waters, defendants stipulated that they had neither claim nor interest in such waters, but thereafter defendants continued to use such water, decree not being binding on defendants as against strangers to suit, defendants, by their stipulation, did not thereby lose their priority rights as against other appropriators who were not parties to such litigation.

See (1) 34 C. J. 1043.   (2) 36 Cyc. 1293 (1926 Anno.).

From Union: GUSTAV ANDERSON, Judge.

In Banc.

MODIFIED.

For appellants there was a brief over the names of *Messrs. Green & Hess, Mr. James H. Nichols* and *Mr. C. H. Finn,* with oral arguments by *Mr. G. T. Cochran* and *Mr. R. J. Green.*

1. See 15 R. C. L. 1005.

For respondents there was a brief over the names of *Mr. Colon R. Eberhard, Mr. Robert S. Eakin, Mr. John .S. Hodgin* and *Mr. J. D. Slater,* with oral arguments by *Mr. Eakin* and *Mr. Slater.*

BURNETT, J.—In this case there are two appeals. The first one to be considered is that of M. F. Dean, J. F. Dean, J. B. Love and J. L. Caviness. It involves the use of the waters of Warm Creek which is a tributary of Catherine Creek, which in turn empties in the Grande Ronde River at a point below all the other irrigation schemes involved in this adjudication. Practically the sole question involved is whether or not the court erred in adding to Finding 18 of the State Water Board these words:

"Provided that the owners of the Conklin Estate lands shall have the first right to the use of the waters from the springs rising on said Conklin Estate lands, to the extent that same are beneficially used."

This depends upon the priority of appropriation of water and its devotion to a useful purpose, and is purely a question of fact. It would encumber the judicial reports of the state without corresponding benefit to cull out from nearly 1,700 pages of testimony and set down here what was said by the various witnesses on the subject. Hence we give only our conclusion. The lands were settled approximately at the same time in the early sixties of the last century, and the settlers began to use water for irrigation soon afterwards. As to locations and the like, the testimony in many respects is obscure and valueless in that some of the witnesses, who evidently had a map before them, would point to it and say, for illustration, that "the dam was located about here and the ditch ran in this direction" without marking the map

in connection with their statements. Such testimony is wholly unintelligible to a mere reader of the record and no information can be derived from it. Suffice it to say for this appeal, therefore, that so far as we can discern from the record, the weight of the testimony is in favor of the correctness of the Circuit Court's decision and it is therefore affirmed without costs or disbursements in favor of either party in this court.

The other appeal is that of E. E. Grout as successor in interest of Dexter Eaton and the heirs and successors in interest of George Gekeler, deceased. In the findings of the Water Board these parties were granted the use of a certain quantity of water out of the Grande Ronde River through the ditch of the Irrigation Canal Company with a date of priority of 1869. The Pioneer Flouring Mill Company, as the successor in interest of the Island City Mercantile and Milling Company objected to the matter of priority, claiming that it should not be earlier than 1883. The Milling Company relies upon a decree rendered in a suit between its predecessor as plaintiff and George Gekeler and the Irrigation Canal Company as defendants, wherein it is decreed in substance that Gekeler, the individual, has no right or interest in the waters of Grande Ronde River; that the Island City Mercantile and Milling Company was entitled to a flow of 1,500 inches of water out of the Grande Ronde River from September 1st of each year until July 1st of the following year and from July 1st to September 1st in the same year, 100 inches of water, and that the Irrigation Canal Company should have the remainder of the water. The Circuit Court so construed this decree as to establish the priority in favor of the Gekelers and Grout and the Irrigation Company as of the year 1883,

that being the date of incorporation of the Irrigation Canal Company. The respondents point to the stipulation between Gekeler and the Milling Company upon which that decree was based wherein it was agreed between the company and George Gekeler that the latter "has and claims to have no right or interest in or to the waters of the Grande Ronde River."

The respondents say that this concludes Gekeler and his heirs who are parties to this proceeding and his successors, and that all the right they have is that derived from their connection as stockholders in the Irrigation Canal Company which confessedly had no existence prior to 1883.

1, 2. In our judgment this conception is erroneous. It is abundantly established by the testimony that at least as early as 1869 the predecessors in interest of the present appellants, Grout, and the heirs of George Gekeler appropriated water from the Grande Ronde River and applied it to the irrigation of the lands here involved. There were other appropriators using water from the same river and for the purpose of the better and more efficient enjoyment of their appropriations they formed a company to maintain the ditch and deliver to them the water of their several appropriations. Whether that company was regularly incorporated or not does not fully appear from the record, but at the very least, it was an instrumentality whereby the appropriators used and enjoyed their appropriations. This scheme continued in operation until 1883, when the present defendant, the Irrigation Canal Company, was incorporated and the work was carried forward under its management.

We note two things about the decree in the case of the Island City Mercantile and Milling Company against the Irrigation Canal Company and George Gekeler. One is that nothing is stated therein about who has the priority in point of time and the other is the feature common to all decrees, codified in Section 756, Or. L., thus:

"The effect of a judgment, decree, or final order in an action, suit or proceeding before a court or judge thereof of this state or of the United States, having jurisdiction to pronounce the same, is as follows:

"1. In case of a judgment, decree, or order against a specific thing, or in respect to the probate of a will or the administration of ths estate of a deceased person, or in respect to the personal, political, or legal condition or relation of a particular person, the judgment, decree, or order is conclusive upon the title to the thing, the will or administration, or the condition or relation of the person;

"2. In other cases, the judgment, decree, or order is, in respect to the matter directly determined, conclusive between the parties and their representatives and successors in interest by title subsequent to the commencement of the action, suit, or proceeding, litigating for the same thing, under the same title, and in the same capacity."

So far as priorities are concerned it would have been perfectly competent for Gekeler to surrender his priority to the Milling Company in consideration of his being released from damages for his invasion of the company's rights. Whatever the effect of that decree may have been between Gekeler and the company, it certainly has no effect as against or in favor of those who were not parties to it. Of course, it would bind the present Gekelers as to the Milling Company, for they are ·successors in interest of a

party to that decree, but it would not bind them respecting strangers to that litigation.

It is true that in the stipulation between Gekeler and the Milling Company he stated as part of the agreement that he had no claim in the waters of Grande Ronde River. Aside from the effect of the decree, limited as it is to the immediate parties to it, the language of that stipulation may be considered as an admission against Gekeler's interest affecting his heirs and other successors in interest, but it is not conclusive. Weight must be given to it in the light of all the circumstances attending the matter. The testimony shows that even after that stipulation and decree in pursuance thereof water was continuously used on the Gekeler lands through the instrumentality of the ditch maintained by the Irrigation Canal Company, just as it was before except as to quantity. The evidence is plain that in the origin of affairs in that country Gekeler's and Grout's predecessors appropriated water, and that the psuedo corporation first devised and the Irrigation Canal Company were instrumentalities fashioned for the enjoyment of those appropriations. So far as that is concerned, the appropriators might have employed men to haul the appropriated water to their lands in water wagons; they might have dug a ditch and discarded it and in its place installed a water-tight pipe-line, or as they did, they might have formed a corporation to serve the same purpose. It does not appear anywhere that any of them released their claims to the water except in the solitary instance of Gekeler's making the admission to the Milling Company.

Treating the question as a matter of fact, it is apparent that in his negotiations with the Milling Company resulting in the stipulation, Gekeler was under the impression that the Irrigation Canal Com-

pany had the ownership of his original appropriation, whereas in fact it was merely an operating concern. Gekeler and Grout admit the superior title of the Milling Company, but they do not confess inferiority in date of appropriation as against the other parties to this proceeding. The conclusion is that the Gekelers and Grout are entitled to be restored to their priority of 1869 as against all parties here involved, except the Pioneer Flouring Mill Company as successor in interest of the Island City Mercantile and Milling Company. The decree of the Circuit Court is thus modified, without costs or disbursements in favor of either party in this court.          MODIFIED.